Formal Opinion No. 2006-F4 Sharon P. O'Conor General Counsel New York State Thruway Authority 200 Southern Blvd. P.O. Box 189 Albany, NY 12201-0189
Dear Ms. O'Conor:
You have asked whether an anticipated transaction involving the taking of an existing easement and, in exchange, the granting of a different easement without the public advertising of bids in connection with a thruway reconstruction project comports with the Public Authorities Accountability Act of 2005.
You have explained that the New York State Department of Transportation ("DOT") is undertaking a reconstruction of Interstate 287 ("I-287"), a highway under the jurisdiction of the Thruway Authority. You have advised that in order for the project to proceed, a gas pipeline owned by the Tennessee Gas Pipeline Company ("Tennessee") must be relocated. The relocation of the pipeline involves the taking of Tennessee Gas' existing easement, the granting to Tennessee Gas of a temporary easement for use during the reconstruction, and the granting of a permanent easement when the pipeline is relocated at the completion of the highway reconstruction. The property that is the subject of these easements is under the jurisdiction of the Thruway Authority. Your question is whether this proposed easement transfer is subject to and consistent with the provisions of the Public Authorities Accountability Act of 2005 that govern the disposition of property. In light of the unique circumstances presented here, we conclude that the proposed property exchange comports with the Act.
FACTUAL BACKGROUND
Pursuant to legislation enacted in 1990, the Thruway Authority acquired from the State I-287 and the lands necessary *Page 2 
for its operation and maintenance. See
Law 1990, ch. 190, §§ 348, 350. As part of the statutory transfer, the Thruway Authority and DOT entered into an agreement under which DOT remains responsible for future reconstruction projects of the highway. See id. § 350. DOT is presently undertaking the reconstruction project relevant to your inquiry. The property involved in the relocation of the pipeline is under the jurisdiction of the Thruway Authority. The property on which the pipeline is currently located is subject to a permanent easement granted by DOT to Tennessee Gas Pipeline in 1971.[1] The Thruway Authority proposes to have Tennessee waive its rights to its existing permanent easement, move its pipeline subject to a temporary easement during the reconstruction, and relocate the pipeline on property subject to a permanent easement once the construction project is complete. You have advised us that the new permanent easement will be approximately the same size and value of the existing permanent easement.[2] Thus, the proposed agreement is essentially an exchange of easements in lieu of monetary compensation for the taking of the existing easement.
STATUTORY BACKGROUND
The Thruway Authority was created to finance, construct, improve, maintain and operate a state thruway system. Public Authorities Law § 353. Its statutory powers include the authority to "acquire and hold in the name of the state by purchase or appropriation real property or rights or easements therein."Id. § 354(4). Thus, the Thruway Authority is authorized to acquire property through condemnation or purchase.Id. §§ 358, 358-a; see also Highway Law § 347(2), (16) (authorizing Commissioner of Transportation to acquire property for the construction, reconstruction and maintenance of the thruway system pursuant to the eminent domain procedure law, or by grant or purchase). With respect to property under its jurisdiction, the Thruway Authority is authorized "to sell, exchange, or otherwise dispose of any real property not necessary for its corporate purposes or whenever the [governing] board *Page 3 
shall determine that it is in the interest of the authority." Public Authorities Law § 354(4); see also Highway Law § 347(19) (authorizing Commissioner of Transportation to sell or exchange property acquired by State for thruway purposes). The Authority also has the power to grant permits and easements for the construction and maintenance of wires, cables, pipelines, water mains and similar equipment over, under, along or across the thruway where not inconsistent with the use of the thruway. Public Authorities Law § 354(11).
The Thruway Authority's acquisition and disposition of real property is also governed by provisions of the recently enacted Public Authorities Accountability Act of 2005 ("the Act").[3] This Act was intended to "ensure greater efficiency, openness and accountability for our State's public authorities." Senate Memorandum in Support for ch. 766, reprinted in
2005 McKinney's N.Y. Laws 2576. The Act includes a number of provisions governing real property dispositions, including requirements for the disclosure of such dispositions in annual reports, Law 2005, ch. 766, § 15 (codified at Public Authorities Law § 2800), the adoption of guidelines governing property dispositions, and the procedures governing the disposition of authority property,id. § 20 (codified at Public Authorities Law §§ 2895-2897).
ANALYSIS
Your question concerns Public Authorities Law § 2897, which specifies the method for disposing of real property and requires the use of publicly advertised bids except in enumerated circumstances.See id. § 2897(6). Because the proposed easement transfer would not involve a public bidding process, your question is whether the transfer is subject to section 2897, and if so, whether it falls within one of the enumerated exceptions.
For purposes of these provisions, disposal includes a "transfer of title or any other beneficial interest in personal or real property," and property is defined as "personal property in excess of five thousand dollars in value, real property, and any inchoate or other interest in such property, to the extent that such interest may be conveyed to any other person for any purposes, excluding an interest securing a loan or other financial obligation of another party." Id. § 2895(2), (3). Any disposal that falls within the scope of this provision must be in accordance with section 2897 of the Public Authorities Law. See *Page 4 id. § 2895(2).
The transfer of a temporary and permanent easement in property belonging to the Authority clearly falls within these expansive definitions. Nor does the fact that the Department of Transportation is acting on behalf of the Thruway Authority in the property transfer remove it from the statute's purview. Cf.
Public Authorities Law § 2897(4) (where Commissioner of General Services is authorized by agreement to dispose of property for an authority, provisions of Act governing disposals apply). Thus, we conclude that the proposed easement transfer is subject to the provisions of the Public Authorities Act of 2005 governing the disposition of property.
Public Authorities Law § 2897 authorizes any public authority to dispose of property "for not less than the fair market value of such property by sale, exchange or transfer, for cash, credit or other property, . . . upon such terms and conditions as the contracting officer [of the authority] deems proper."Id. § 2897(3). However, as noted, the statute also requires a public bidding process for all such disposals.Id. § 2897(6)(a). Only if one of the enumerated exceptions apply may the authority forego the public bidding process and dispose of the property through negotiation or public auction.Id. § 2897(6) (c).
In our view, one of these exemptions applies to the proposed easement transfer. Section 2897 exempts disposal of authority property for an amount less than fair market value through negotiation or auction without public bidding where disposal of the property is intended to further the public health, safety or welfare or economic development of the State or a political subdivision.[4] Public Authorities Law § 2897(6) (c) (v) . Purposes *Page 5 
that satisfy these criteria include the prevention or remediation of a substantial threat to public health or safety, the creation or retention of a substantial number of job opportunities or substantial source of revenues, or where the authority's enabling legislation so permits. Id.
The Legislature's reasons for enacting the disposition requirements and the Act as a whole provide useful guidance in interpreting the scope of this exception.[5] The requirements that authority property be disposed of at no less than fair market value and that such disposals result from publicly advertised bids were intended to "promote increased accountability, ethics and public confidence" in the disposition of property by public authorities. Remarks of Sen. Leibell, NYS Senate Debate (June 24, 2005), at 5778-79. The detailed procedures governing the disposal of property were proposed "to ensure that [property owned by an authority] is not transferred for lower than fair market value." Memorandum from K. Bennett, Legislative Bureau Chief of the Office of the Attorney General to R. Platkin, Counsel to the Governor (July 29, 2005), at 1; see also Assembly Memorandum in Support of A5626 (2005), at 10 (describing proposal containing disposition provisions identical to those ultimately enacted as "establish[ing] rules for the disposition of property by public authorities to prevent undervalued sale of State assets"). Indeed, the disposition provisions were prompted in part by specific authority transactions that were the subject of audits by the State Comptroller and investigations by legislative committees.See Office of the State Comptroller, Public Authorities inNew York State: Accelerating Momentum to AchieveReform (Feb. 2005); Assembly Memorandum in Support of Assembly Bill A.9010-C (2004), at 2-3; Assembly Memorandum in Support of Assembly Bill A.5626 (2005), at 9.
The disposition procedures seek to promote accountability and protect against abuses by requiring that disposals of *Page 6 
authority property be made for not less than the fair market value of the property and only after publicly advertising for bids. Public Authorities Law § 2897(3), (6). As outlined in the legislative history, these requirements were intended to help ensure that authority property would be disposed of fairly, at an appropriate value and without being steered toward particular purchasers.
The statutory examples of the types of purposes that satisfy the public health, safety and welfare exception are also instructive as to the intended scope of this exception. The specific examples listed — the prevention or remediation of a substantial
threat to public health or safety, the creation or retention of asubstantial number of job opportunities orsubstantial source of revenues — indicate that this exception was intended to be narrowly construed. Moreover, unlike the other enumerated exceptions to the public bidding requirement, the "public health, safety and welfare" exception applies to dispositions for less than fair market value, and thus this exception must necessarily be carefully limited in its application so that it does not undermine the primary goal of the provision — to require that authorities dispose of property for its fair market value.
In this case, the State Department of Transportation is undertaking on behalf of the Thruway Authority a major reconstruction project to provide safer and more efficient travel on an integral portion of the thruway system. As noted, the Thruway Authority is authorized by its enabling act to dispose of, including by exchange, real property that is not necessary for its corporate purposes. You have advised that relocation of Tennessee's gas pipeline is necessary for reconstruction of the highway, and that the proposed easement transfer facilitates this relocation. The Authority is specially authorized to grant easements for the placement of gas lines and similar equipment where such easements are consistent with the use of the thruway. See
Public Authorities Law § 354(11). You have indicated that where, as here, reconstruction of the thruway necessitates the relocation of a pipeline located on property subject to an easement, the Authority generally seeks to enter an agreement with the property owner for the granting of a new easement in exchange for the taking of the existing easement. See Eminent Domain Procedure Law § 301 (establishing policy of just compensation through negotiation and agreement); id. § 303 (offer of just compensation by condemnor shall be 100% of valuation of the property). You have further advised that the new permanent easement is approximately the same size and value of the existing *Page 7 
permanent easement held by Tennessee Gas.[6]
We find application of the exception contained in section 2987(6)(c)(v) is appropriate under the unique circumstances presented here, where (1) the Authority has determined that the easement transfer is necessary for the needed reconstruction of the thruway and the continued distribution of gas to New York customers, both of which are important to public health, safety, job creation, and revenues; (2) public bidding would not effectuate the twin purposes of the proposed easement transfer, which involves not only a taking of a private property interest needed by the Authority to further its primary purposes (thruway construction and maintenance), but also the granting of a new easement to accommodate another statutory power of the Authority (the granting of easements for utility transport); (3) the Authority will receive the fair market value of the easement through the property exchange; and (4) this is not the type of property disposal that was previously found subject to abuse by public authorities or that prompted enactment of the stringent disposition procedures.[7]
Based upon the combination of all of these factors, we *Page 8 
therefore conclude that the proposed easement transfer may be effectuated pursuant to the terms of this statutory provision.
Finally, we note that although the proposed transaction may fall within an exception to the public bidding requirements of the 2005 Act, the easement exchange is subject to other procedural safeguards of the Act. Specifically, section 2897(6)(d) of the Public Authorities Law requires the preparation of an explanatory statement for specified disposals by negotiation, including the negotiated disposal of real property by exchange, regardless of the value of the real property. Public Authorities Law § 2897(6)(d)(i)(E). This explanatory statement, which indicates the circumstances of the negotiated disposal, must be transmitted to the Comptroller, the Director of the Budget, the Commissioner of General Services, and the Legislature. Id. §§ 2896(3), 2897(6) (d) (ii).
CONCLUSION
We conclude that the proposed transfer of an easement to facilitate the relocation of a gas pipeline necessitated by a major thruway reconstruction project is subject to the Public Authorities Accountability Act of 2005. We further conclude that such transfer may be accomplished without public bidding pursuant to the exception in Public Authorities Law § 2897(6) (c) (v).
Very truly yours,
ELIOT SPITZER Attorney General
[1] You have advised that Tennessee acquired the easement because construction of the interstate had required the relocation of its pre-existing natural gas pipeline facilities. See Highway Law § 10(24-b).
[2] In responding to your question, we have relied upon your representation regarding the value of the two easements at issue. Should they instead be of materially different value, our analysis might be different.
[3] The Act applies to state and local authorities. See
Law 2005, ch. 766 §§ 2, 15-20 (codified at Public Authorities Law §§ 2, 2800-2802, 2824-2825, 2895-2897).
[4] Section 2897(6) (c) (v) provides that a disposal may be negotiated or made by public auction without public bidding if "the disposal is for an amount less than the estimated fair market value of the property, the terms of such disposal are obtained by public auction or negotiation, the disposal of the property is intended to further the public health, safety or welfare or an economic development interest of the state or a political subdivision (to include but not limited to, the prevention or remediation of a substantial threat to public health or safety, the creation or retention of a substantial number of job opportunities, or the creation or retention of a substantial source of revenues, or where the authority's enabling legislation permits), the purpose and the terms of such disposal are documented in writing and approved by resolution of the board of the public authority."
[5] None of the legislative history materials that we have reviewed discuss the scope of the enumerated exceptions to the public bidding process applicable to disposals of public authority property. The requirement for public bidding in the disposal of authority property and the enumerated exceptions to the bidding requirement contained in section 2897 of the Public Authorities Law derive from earlier versions of public authority reform bills introduced in the Assembly.See A.9010-C (intr. June 15, 2003, passed Ass. Feb. 9, 2004); A.5626 (intr. Feb. 24, 2005, passed Ass. March 9, 2005).
[6] Section 2897(6) (c) (v) exempts from public bidding dispositions for less than fair market value. Under the proposed exchange, the Authority would in fact receive fair market value in the form of Tennessee Gas' existing easement. One of the primary concerns that prompted passage of the Act, seesupra at 5, therefore is not at issue here. Reliance on section 2897(6)(c)(v) thus seems appropriate in this circumstance.
[7] As originally proposed, the enumerated exceptions to the public bidding requirement included an exception for dispositions of real property where "the character or condition of the real property, the nature of the interest to be conveyed or other unusual circumstances make it impractical to advertise publicly for competitive bids, and the fair market value of the property and other satisfactory terms of disposal can be obtained by negotiation." 2004 N.Y. Assembly Bill A.9010-C. In subsequent bills, this exception was replaced with the "public health, welfare and safety" exception enacted as Public Authorities Law § 2897(6)(c)(v). This legislative history supports our conclusion that the narrow exception for negotiated disposals that further the public health, safety or welfare can reasonably be interpreted to permit an exception to the public bidding requirement for a real property exchange at fair market value where the nature of the property interest and the circumstances requiring its transfer are not appropriate for public bidding.